<pre>
1        IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF MISSOURI
2                 WESTERN DIVISION

3   UNITED STATES OF AMERICA,          )

4                   Plaintiff,     )Case No.

5        vs.                       )10-00025-01-CR-W-HFS

6   KHALID OUAZZANI,               )

7                   Defendant.     )

8

9         TRANSCRIPT OF CHANGE OF PLEA HEARING

10       On Wednesday, May 19, 2010, the above-entitled

11  cause came on before the Honorable Howard F. Sachs, U.S.

12  District Judge, sitting in Kansas City, Missouri.

13

14                     APPEARANCES

15  For the Plaintiff:     MR. J. DANIEL STEWART
                           Assistant United States Attorney
16                         Charles Evans Whittaker Courthouse
                           400 East Ninth Street, Floor 5
17                         Kansas City, Missouri 64106

18  For the Defendant:     MR. ROBIN D. FOWLER
                           Bath & Edmonds, P.A.
19                         7944 Santa Fe Drive
                           Overland Park, Kansas 66204
20

21

22          Gayle M. Wambolt, RMR, CRR
            U.S. Court Reporter, Room 7552
23       Charles Evans Whittaker Courthouse
              400 East Ninth Street
24     Kansas City, MO 64106 (816) 512-5641

25
                         1
</pre>

```
 1                    WEDNESDAY, MAY 19, 2010

 2                    THE COURT:  The court is in session for a

 3      reported waiver of indictment and a plea to an information

 4      and also in a pending case, a plea of guilty to two counts

 5      regarding bank fraud and money laundering.  The case is

 6      United States of America v. Khalid Ouazzani.

 7                    Mr. Stewart will be lead counsel for the United

 8      States.

 9                    Mr. Fowler will be lead counsel for the

10      defendant.

11                    I would ask that the defendant and Mr. Fowler

12      come forward.

13                    The oath should be administered to Mr. Ouazzani.

14      KHALID OUAZZANI, being duly sworn, testified:

15      EXAMINATION BY THE COURT:

16      Q    The papers that I have indicate that you were born in

17      1977.  Would that be correct, Mr. Ouazzani?

18      A    Yes, sir.

19      Q    And how much education have you completed?

20      A    Some college.

21      Q    Can you give me in general some description of the

22      employment experience, your general occupation?

23      A    Mostly sales management.

24      Q    Are you currently or have you recently been under the

25      care of a physician or psychiatrist?
```

                                  2

Case 4:10-cr-00025-HFS   Document 31   Filed 07/09/10   Page 2 of 37

```
 1    A    No, sir.

 2    Q    Have you been hospitalized or treated for a narcotic

 3    addiction?

 4    A    No, sir.

 5    Q    And are you presently on any medication affecting your

 6    thought processes, or have you had any narcotic drugs in

 7    the past 24 hours?

 8    A    No, sir.

 9              THE COURT:  You have counsel at this time.  I

10    advise that you have a right to a lawyer, and that if

11    necessary a lawyer will be appointed to represent you.

12              We will deal first with the issue of the filing

13    of an information which is in addition to the present

14    indictment that is pending against you for bank fraud and

15    money laundering.

16              A copy of the information that the government

17    wishes to file is in front of me.  It can only be filed

18    with your consent, so we need to have proceedings to

19    determine if you are willing to have the information filed

20    with your consent.  And we need to have a sufficient

21    record indicating an understanding of your rights in

22    connection with that filing.

23              At some point in the proceeding if the

24    information is filed, there would be a right to have the

25    information read in open court, and I will have it read at
```

3

1    this time by Mr. Stewart for two reasons.

2                One, to deal with that portion of the proceeding

3    and also to make sure you understand what the charge

4    against you that the government wishes to file would be.

5                So, Mr. Stewart, you can -- I would ask you to

6    read the information at this time.

7                MR. STEWART:  May it please the court.

8                The information reads, "The United States

9    attorney charges, one, at all times material to this

10   information Al-Qaida was, A, a designated terrorist

11   organization as that term is defined in 18 U.S.C. Section

12   2339B(g)(6), that is, an organization that was first

13   designated by the U.S. Secretary of State as a foreign

14   terrorist organization on October 8, 1999, and has been

15   redesignated as such on various dates;

16                "And, B, was an organization which had engaged

17   in and engages in terrorist activity as defined in Section

18   212(a)(3)(B) of the Immigration and Nationality Act and

19   which had engaged in and engages in terrorism as defined

20   in Section 140(d)(2) of the Foreign Relations

21   Authorization Act, Fiscal Years 1988 and 1989.

22                "Two, from at least in or about August 2007, up

23   to and including in or about February 2010, at Kansas City

24   in the Western District of Missouri, and elsewhere

25   defendant Khalid Ouazzani and others known and unknown did

                                    4

1    knowingly conspire to provide, quote, material support or

    2    resources, closed quote, as that term is defined in 18

    3    U.S.C. Section 2339A(b) to Al-Qaida, Ouazzani and the

    4    coconspirators knowing that Al-Qaida was a designated

    5    terrorist organization and that Al-Qaida was an

    6    organization which had engaged in and was engaging in

    7    terrorist activity and terrorism; and there is

    8    jurisdiction for this offense under 18 U.S.C. Section

    9    2339B(d)(1), Sections A, D, and E, in that defendant

   10    Ouazzani is a national of the United States as defined in

   11    Section 101(a)(22) of the Immigration and Nationality Act,

   12    8 U.S.C. Section 1101(a)(22); the offense occurred in

   13    whole or in part within the United States; and the offense

   14    occurred in and affected interstate or foreign commerce.

   15         "Three, it was a part of the conspiracy that

   16    Ouazzani and coconspirators would and did discuss various

   17    specific ways they could support Al-Qaida, including

   18    providing currency, advice, and assistance to Al-Qaida,

   19    such assistance including fighting in Afghanistan, Iraq,

   20    or Somalia at the request of Al-Qaida.  In conducting

   21    these discussions, Ouazzani and coconspirators, known and

   22    unknown to the United States, would and did use various

   23    methods and techniques to attempt to disguise their

   24    communications in order to avoid detection by law

   25    enforcement officials that they were providing various

                                 5

Case 4:10-cr-00025-HFS   Document 31   Filed 07/09/10   Page 5 of 37

1  types of support to Al-Qaida.

2  "Four, it was a further part of the conspiracy

3  that Ouazzani would and did personally provide over

4  $23,000 in United States currency for the use and benefit

5  of Al-Qaida and would and did perform other tasks at the

6  request of and for the benefit of Al-Qaida.

7  "Overt acts, paragraph 5, in furtherance of the

8  conspiracy and to effect the illegal objects thereof,

9  Ouazzani committed and caused to be committed the

10  following overt acts, among others, in the Western

11  District of Missouri and elsewhere:

12  "A, in or about August 2007, Ouazzani agreed to

13  contribute approximately $6,500 to Al-Qaida through a

14  coconspirator and caused the coconspirator to pay such

15  funds to Al-Qaida on behalf of Ouazzani.

16  "B, in or about November 2007, Ouazzani repaid

17  the coconspirator for the $6,500 funds previously sent to

18  Al-Qaida through a wire transfer of funds from an account

19  of Ouazzani's at Bank of America, Kansas City, Missouri,

20  to an account of the coconspirator in United Arab

21  Emirates.

22  "C, in or about June or July 2008, Ouazzani

23  agreed to pay Al-Qaida a total of $17,000 representing his

24  profits from the sale of real property in United Arab

25  Emirates owned by Ouazzani and a coconspirator, and

6

1    instructed the coconspirator to make such payment to

2    Al-Qaida on Ouazzani's behalf.

3         "D, in or about June 2008, Ouazzani swore an

4    oath of allegiance to Al-Qaida through a coconspirator.

5         "All in violation of Title 18, U.S. Code,

6    Sections 2339B(a)(1), (d)(1)(A), (d)(1)(D), and

7    (d)(1)(E)."

8         THE COURT:  The sum of the language in the

9    proposed information may be fairly well understood by you,

10   but I would further advise that the prosecution would need

11   to prove at trial if there was a trial for this charge of

12   material support to a terrorist organization, that you

13   knowingly provided material support or resources to a

14   foreign terrorist organization or that you conspired to do

15   so, that is, agreed to do so, planned to do so, that you

16   knew that the organization Al-Qaida was a designated

17   terrorist organization or that it was engaged in terrorist

18   activities.

19        In order to have jurisdiction, there would need

20   to be a showing that you were either a national of the

21   United States or a permanent resident alien or that the

22   offense occurred in whole or in part within the United

23   States or that the offense occurred in or affecting

24   interstate or foreign commerce.

25        The term "terrorism" is defined in statute

7

Case 4:10-cr-00025-HFS   Document 31   Filed 07/09/10   Page 7 of 37

1    meaning premeditated, politically motivated, violence

2    perpetrated against noncombatant targets by subnational

3    groups or clandestine agents.

4         Terrorist activity is defined as including

5    various activities that are unlawful under the laws of the

6    place where committed or which if they had been committed

7    in the United States would be unlawful under the laws of

8    the United States including a list of conduct such as

9    highjacking or sabotage of vehicles or aircraft, use of

10   biological agents or chemical agents or explosives or

11   dangerous devices with intent to endanger directly or

12   indirectly the safety of one or more individuals or to

13   cause substantial damage to property.

14         Unless counsel would ask that I give a further

15   explanation of the proposed information, I'll go on to the

16   issue of punishment which you need to keep in mind when a

17   decision is made as to whether you're willing to have this

18   information filed with your consent.

19         The maximum punishment under the statutes would

20   be a term of 15 years imprisonment, a fine not to exceed

21   $250,000.  There would be a period of supervised release

22   after imprisonment of not more than five years, and there

23   would be a $100 mandatory special assessment.  The

24   reference that I made to supervised release means that

25   after a release from imprisonment, there would be

                                  8

1    supervision by a federal probation officer.  One purpose

2    of that would be to get assurance that there was

3    compliance with what we call conditions of release.  The

4    conditions of release cannot be fully explained at this

5    time because they would vary from individual to individual

6    and from offense to offense.

7         But for illustration the conditions of release

8    would always include a requirement that there be no

9    further law violation.  If it was reported that there was

10   a violation of a condition of release, the court would

11   have to determine if the violation occurred, and if so,

12   the court could impose a second period of imprisonment as

13   punishment for the violation.

14        The second period, the maximum on the second

15   period of imprisonment is not in the papers before me.  I

16   believe they would -- it would be three years for a

17   violation unless counsel advises me differently.

18        MR. FOWLER:  Judge, I'm sorry.  I think

19   that's accurate as for probably the bank fraud count.

20        I think the information on the 2339B count is a

21   three-year maximum term of supervised release.  It's

22   probably irrelevant since the bank fraud has a maximum of

23   five.  The plea agreement has three years.  I think maybe

24   the caption is incorrect on the information.

25        THE COURT:  All right.  I'll accept that

                              9

Case 4:10-cr-00025-HFS   Document 31   Filed 07/09/10   Page 9 of 37

1    correction because there are various issues as to various

2    periods of supervised release on the various counts.

3           I do advise that there's no credit given for

4    compliance with conditions of release which means that the

5    same punishment would be imposed if the violation occurred

6    after a good deal of compliance as would be imposed if the

7    violation occurred shortly after supervision began.

8           I also advise that the court could impose the

9    cost of imprisonment and the cost of supervision after

10   imprisonment on a defendant, but the decision on whether

11   to impose those costs depends largely on the ability to

12   pay.

13          Mr. Ouazzani, we're limiting ourselves to the

14   information because that's what has not yet been filed.

15          Do you understand the nature of the charge and

16   the maximum punishment under the law?

17                THE DEFENDANT:  Yes, sir.

18                THE COURT:  I have suggested that the

19   information can only be filed with your consent.  Under

20   the Constitution you will have the right to have these

21   charges presented to a grand jury instead of having them

22   filed by government counsel.  However, you can give up

23   your grand jury rights and consent to the filing by the

24   United States attorney.  If you do not give up your right

25   to grand jury, the matter would be presented to a grand

                              10

1  jury and could only proceed against you if the grand jury

2  were to file charges in what's called an indictment.  If

3  you decline to waive indictment, the government can

4  proceed with the grand jury.

5          I need to advise you further about a grand jury.

6  A grand jury is a body of persons appointed by the judges

7  for a number of months.  Twenty-three are appointed to

8  serve as grand jurors.  At least 16 must be present in

9  order for the grand jury to have a quorum to take action,

10  and at least 12 of the grand jurors must find there's

11  probable cause to believe that a person has committed a

12  crime before they can be indicted.

13          If you do give up your grand jury rights, your

14  right to an indictment, the case proceeds against you just

15  as though there had been an indictment.

16          Have you discussed the matter of giving up your

17  grand jury rights?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  And do you understand the grand

20  jury rights or the right to indictment that I have

21  referred to?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  Were there any threats or

24  promises made other than a plea agreement to cause you to

25  waive indictment?

                          11

```
 1              THE DEFENDANT:  No, sir.

 2              THE COURT:  And do you wish to give up your

 3   grand jury rights, your right to an indictment?

 4              THE DEFENDANT:  Yes, sir.

 5              THE COURT:  Okay.  I have a waiver of

 6   indictment form before me that has been signed, and I will

 7   sign it also essentially as a witness.  I would authorize

 8   that the information be filed.  I conclude that the waiver

 9   of indictment is knowingly made and voluntarily made and

10   it is accepted.  So the information that has previously

11   been read can now be filed.

12              We next need to deal with what's called an

13   arraignment.  That is your decision on whether to plead

14   guilty or not guilty to the information, but we also have

15   under the plea agreement an anticipated plea to two of the

16   charges in the indictment.  I need to review those charges

17   with you before taking the plea.

18              It's my understanding that we're dealing with

19   Count 11 which is referenced as bank fraud, Union Bank,

20   and Count 23 which is referred to as money laundering,

21   Union Bank funds charge.

22              Count 11, the bank fraud charge, has some

23   complexity.  I'll touch on what would appear to me to be

24   the more significant portions or at least the portion that

25   would allow an understanding of the whole count if the
```

```
 1     description of the charges should be supplemented either

 2     on the information or on the indictment.  I would invite

 3     Mr. Stewart to at some point suggest a further

 4     explanation.

 5               But the substance of the bank fraud charge would

 6     seem to be that on the 9th of October of 2006, that you,

 7     Mr. Ouazzani, formed a Missouri Limited Liability Company

 8     with an address at East Truman Road in this city called

 9     Hafssa, LLC, and that that company was in the retail

10     business of buying and selling auto parts and used motor

11     vehicles; that in February of 2007 you filed a fictitious

12     name registration as Truman Used Auto Parts and did

13     business under that name, which is -- of course, that

14     portion of it is appropriate and not illegal; that between

15     March of 2007 and October of 2008, that you devised a

16     scheme to defraud Union Bank in Kansas City, Missouri,

17     which was an insured depository institution that is

18     insured by the Federal Deposit Insurance Corporation; that

19     the plan was to obtain funds by material false and

20     fraudulent pretenses and representations; that in April of

21     2007, you applied for a line of credit commercial loan

22     from Union Bank and submitted false and fraudulent

23     financial information; that the following

24     misrepresentations were made:  That a copy of a 2005

25     federal personal income tax return was submitted to the
```

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

1    bank which substantially overstated the amount of income

2    as compared with the tax return that you actually filed

3    with the Internal Revenue Service.

4         It's further alleged that you made false

5    statements concerning the value of approximately nine

6    parcels of real estate purchased at tax foreclosure sales

7    and that you concealed the fact that you were married and

8    that there was a spousal interest in the real estate.

9    It's also alleged that you knowingly submitted a borrowing

10   base certificate dated the 17th of May of 2007,

11   overstating the amount of business inventory claiming that

12   it totaled over $680,000 whereas the inventory was

13   substantially less than that amount; that as part of the

14   scheme to defraud Union Bank on about April 16th, 2007,

15   you caused the Union Bank to make a loan line of credit in

16   the amount of $175,000 to the company for, quote, working

17   capital based on material false and fraudulent financial

18   information previously submitted.

19        It's alleged that you signed a promissory note

20   for the $175,000 commercial loan line of credit and

21   represented that the company that I referred to had

22   regulatory licenses required to operate the businesses

23   whereas the -- and neither the company nor you had the

24   required licenses to sell used auto parts or motor

25   vehicles.

14

```
 1              It's further alleged in this fraud count that
 2      you made withdrawals of approximately $181,000 and used
 3      the proceeds for purposes other than working capital.
 4      It's alleged that you diverted receipts, and funds were
 5      not used to repay the Union Bank but rather for use and
 6      benefit of yourself including issuing a check for $10,000
 7      to an individual at Atlantic Realty on March 17th, 2008
 8      and a wire transfer of $9,000 payable to the same
 9      individual in Australia on October 14th, '08; and in
10      addition that you defaulted on payments resulting in a
11      loss of over $174,000 and that the false information
12      previously referred to was made to induce the commercial
13      loan that has been referred to.
14              So that's the allegation of the bank fraud
15      charge essentially.
16              The money laundering charge includes an
17      allegation that on April 25th, 2007, you caused to be
18      withdrawn an advance of $75,000 on the working capital
19      commercial loan line from Union Bank and caused those
20      funds to be deposited into an account of the company at
21      Union Bank in violation of a statute.  That was April
22      25th.
23              On May 17th, 2007, you caused to be withdrawn an
24      advance of $21,000 on the working capital customer loan
25      line of credit and caused the funds to be deposited in the
                                    15
```

```
1    company's account at Union Bank in violation of the same
2    statute; that on April the 30th, 2007 -- from about April
3    30th, 2007 through May 21, 2007, you caused to be
4    withdrawn counter checks totaling $115,000 payable to you
5    and two checks totaling $60,000 drawn on the company
6    account at Union Bank payable to you and caused those
7    checks to be deposited in a Bank of America account.
8              On May the 23rd, 2007, you caused a wire
9    transfer of approximately $112,830 from the Bank of
10   America to an account of New World Star Real Estate, Habib
11   Bank Limited, Dubai, United Arab Emirates, and the source
12   of the funds was the $171,000 in advance on the Union Bank
13   working capital commercial loan line of credit.
14             And, further, that you on May the 23rd, 2007, in
15   this district, that you conducted a financial transaction,
16   a wire transfer of $112,830 from a place in the United
17   States that is the Bank of America in Kansas City to a
18   place outside the United States, that is, the entity
19   previously identified, Dubai, United Arab Emirates,
20   knowing that the funds involved in the transaction
21   represented the proceeds of a form of unlawful activity
22   and knowing that the transaction was designed in whole or
23   in part to conceal or disguise the source, ownership of
24   the funds.  That is bank fraud.
25             Now, I need to review with you further the
```

                                16

1    nature of these charges and the punishment under the law

2    for a violation.  The bank fraud charge in Section 1344 of

3    Title 18 punishes persons who knowingly execute a scheme

4    or artifice to defraud a financial institution by means of

5    false or fraudulent pretenses.  That's the first count

6    that I had referred to.

7            The money laundering charge is described in

8    Section 1956 in Title 18, punishing persons who knowingly

9    invest financial transactions with proceeds of form of

10   unlawful activity with intent to carry out the unlawful

11   activity or to conceal or disguise the nature of the

12   ownership or specified financial -- unlawful activity.

13   The bank fraud charge, if established by proof at trial or

14   by a plea of guilty, could result in a prison term of up

15   to 30 years, a fine of up to $1 million, a period of

16   supervised release of not more than five years, and there

17   would be an order of restitution for any loss that has

18   occurred.

19           The money laundering count could result in a

20   term of imprisonment of not more than 20 years, a fine of

21   up to $500,000, a term of supervised release be not more

22   than three years, and there would be a $100 mandatory

23   special assessment on each of the counts.  That is on each

24   of the counts that I've referred to in the indictment and

25   also on the information.

                            17

Now, the punishment could be imposed to run

concurrently or to run consecutively.  The court would

have authority to impose consecutive sentences on both the

information charged and the two counts of bank fraud and

money laundering that I have referred to.

            I've already discussed with you the issues of

supervised release and punishment for a violation.  What

I've said concerning that with the information would apply

also with the two counts on the indictment.

            Mr. Ouazzani, do you understand the charges

against you in the bank fraud charge that is Count 11?

            THE DEFENDANT:  Yes, sir.

            THE COURT:  And do you understand the charges

against you in Count 23 in the money laundering charge?

            THE DEFENDANT:  Yes, sir.

            THE COURT:  And do you understand the maximum

punishment that I've explained to you?

            THE DEFENDANT:  Yes, sir.

            THE COURT:  I might suggest that if anyone

gets tired during the course of this session, you can ask

for a brief recess.

            I need to review with you, Mr. Ouazzani, your

procedural rights.  I have referred to your right to

counsel.  I remind you of that.  There's a right to plead

not guilty to the information and to the two counts of the

                              18

indictment that I have referred to and persist in that
count.

If you did plead not guilty, there would be a
trial. It would be a jury trial. There would be the
right to hear witnesses against you in the courtroom, the
right to have the witnesses questioned by your attorney.
You would have what is referred to as privilege against
self-incrimination at a trial. That means that you would
not be compelled to testify unless you chose to do so.

If you did not testify, then the prosecution
would not be permitted to make any argument to the jury or
comment to the jury that they should in some way hold it
against you that you did not testify, find you guilty
because you did not testify. If you wish to be a witness,
you could be a witness. You could also call witnesses to
testify on your behalf.

At a trial you would be presumed to be innocent
of the charges, which means that the government would be
required to present sound legal evidence establishing
guilt and would be required to satisfy the jury beyond a
reasonable doubt on each of the three charges that we have
been referring to before there could be a conviction.

That jury would consist of 12 persons. They
would all have to agree on guilt before there could be a
conviction. If the jury was unable to agree, there could

19

be another trial, but there could be no conviction without

        a unanimous decision by all 12 members of the jury.

                In the event of a trial and a conviction, there

        would be the right to appeal through another court, and

        that court, a panel of three judges, would be available to

        review the proceedings to be sure that there had been

        essentially a fair trial and that there was enough

        evidence to allow a verdict of guilty.

                In the event of a pleading of guilty that's

        accepted by the court, there would be no trial, and by

        that plea you would be giving up the trial rights that I

        have been reviewing with you and also a right to appeal

        from the finding of guilt.

                Do you understand the procedural rights I've

        been reviewing with you?

                        THE DEFENDANT:  Yes, sir.

                        THE COURT:  Next we'll talk about the

        questioning process.  I cannot just accept a defendant's

        statement that a defendant is guilty of certain charges.

        I have to find before entering that plea that there is a

        factual basis for acceptance of the plea.

                In order to do that, generally it's handled by

        questions to a defendant about the offense.  I do remind

        you that because of the privilege against

        self-incrimination, there is no legal duty to respond to

                                    20

1    the questions about the offense.  You can make essentially

        2    a confession in the courtroom if you choose to do so.

        3            But it is your choice.

        4            I do remind you that you are under oath and that

        5    the answers you give could be used against you in a

        6    prosecution for perjury for making a false statement.  Do

        7    you understand the questioning process?

        8            THE DEFENDANT:  Yes, sir.

        9            THE COURT:  Now, I have referred at times to

       10    a plea agreement, which I have seen.  We need to have a

       11    record showing an understanding of that agreement which

       12    runs to 21 pages.  We do not need a line-by-line review of

       13    the agreement, but I would ask the lawyers, either one

       14    side or the other, to describe what you consider to be the

       15    main points in the plea agreement.

       16            Mr. Stewart.

       17            MR. STEWART:  Yes, Your Honor.  The agreement

       18    references the anticipated pleas of guilty to the three

       19    counts discussed in court, and there's a factual basis for

       20    the guilty plea, which Mr. Fowler I believe is going to

       21    question Mr. Ouazzani about in more detail.

       22            There's a reference to the statutory penalties

       23    that are provided by statute.

       24            Paragraph 7 refers to the government's

       25    agreements.  Those are that the government agrees not to

                                         21

bring any additional charges against the defendant or any

          federal criminal offenses related to the crimes charged in

          the indictment or information, and the government would

          dismiss the remaining counts of the indictment at the time

          of sentencing.

                    There are provisions about the preparation of

          the presentence report.

                    Paragraph 10 refers to the guideline's

          applications, and there is a detailed recitation of what

          is the government's anticipated sentencing guidelines for

          the court to consider in making the final determination.

          The introduction of that states that the government

          submits but defendant may not agree as follows, and the

          details relating to the guidelines for bank fraud and

          money laundering and the material support to a designated

          terrorist organization are set forth in some detail there.

          I will not go through those.

                    While the defendant reserves the right to --

          doesn't stipulate to them, Mr. Fowler has indicated that

          he's in significant agreement with most of the guidelines

          but wanted to reserve his rights to contest, if necessary,

          certain portions of them.

                    Is that correct, Mr. Fowler?

                    MR. FOWLER:  It is, Your Honor.

                    MR. STEWART:  There are some other matters,

                                  22

including the rights that the court has just gone through, the trial rights.  Paragraph 15 refers to the waiver of appellate rights by the defendant in some detail, that he agrees to waive his -- any right to appeal a finding of guilt.  He does retain the right to appeal any sentencing guideline issues that have not been agreed upon by the parties.

There are certain provisions relating to financial obligations and a number of provisions relating to waiver of Freedom of Information Act rights, claims for attorney fees, biological evidence, and so forth.  There are provisions then on -- for each of the -- if there is a breach of the plea agreement, what happens.

I think in substance that's what the plea agreement provides.

THE COURT:  Mr. Fowler, is there anything that has been said about the plea agreement that you disagree with, or is there anything that has not been mentioned?

MR. FOWLER:  No, Your Honor.  I think that's accurate.

THE COURT:  Mr. Ouazzani, before signing the plea agreement, did you review it carefully with your attorney?

THE DEFENDANT:  Yes, sir.

23

1        THE COURT:  And having done that and having

2   heard the description in the courtroom, are you satisfied

3   you do understand the agreement?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  The record should reflect I have

6   not participated in negotiations leading to the agreement,

7   and I will follow my standard practice of accepting the

8   agreement conditionally, that is, subject to further

9   consideration when I receive a presentence report.  If I

10  should reject the agreement for some reason, which would

11  be very unusual, I would afford the defendant an

12  opportunity to withdraw his plea and to ask for a trial.

13       That would be extremely unusual, but I mention

14  it simply to indicate that if despite the proceedings

15  today there were to be a trial, nothing said today could

16  be used to prove the charges brought by the government.

17       Having made that reference to a possible

18  withdrawal of the plea, I want the defendant to understand

19  that other than a rejection of the plea agreement, it

20  should be considered almost impossible to obtain the

21  court's approval of a withdrawal of a guilty plea once

22  it's been offered to the court and accepted.

23       Now, I'll ask what I suppose are the most

24  important questions of the proceeding.

25       On the information that has been filed and

                                24

```
 1    that's been described here, how do you wish to plead,

 2    guilty or not guilty?

 3                    THE DEFENDANT:  Guilty.

 4                    THE COURT:  Okay.  On the Count 11 of the

 5    indictment that is the bank fraud charge, how do you wish

 6    to plead, guilty or not guilty?

 7                    THE DEFENDANT:  Guilty.

 8                    THE COURT:  And on the money laundering

 9    charge, Count 23, how do you wish to plead, guilty or not

10    guilty?

11                    THE DEFENDANT:  Guilty.

12                    THE COURT:  Mr. Fowler, are you satisfied

13    that the defendant is competent to enter a plea?

14                    MR. FOWLER:  Yes, Your Honor.

15                    THE COURT:  I would suppose that there are

16    some sensitive issues here in the government's

17    investigation, but, Mr. Fowler, are you satisfied that you

18    have sufficient information from the government's

19    investigative file and from your own investigation to

20    recommend the plea?

21                    MR. FOWLER:  Yes, Your Honor.

22                    THE COURT:  Mr. Ouazzani, have you conferred

23    with your attorney as much as you believe you need to to

24    enter into a plea?

25                    THE DEFENDANT:  Yes.
                                  25
```

```
 1                    THE COURT:  Are you satisfied with the way
 2     he's handled this case?
 3                    THE DEFENDANT:  Yes, sir.
 4                    THE COURT:  Have you understood the
 5     proceedings so far?
 6                    THE DEFENDANT:  Yes, sir.
 7                    THE COURT:  It's been an unusually long
 8     proceeding.  If there is something that you have some
 9     doubts about, you can ask for an opportunity to talk to
10     your attorney further.
11                 Are you ready to proceed?
12                    THE DEFENDANT:  Yes, sir.
13                    THE COURT:  Was there any physical force used
14     to cause you to enter into a plea agreement or plead
15     guilty?
16                    THE DEFENDANT:  No, sir.
17                    THE COURT:  Were there any threats made
18     causing you to enter into the agreement or to plead
19     guilty?
20                    THE DEFENDANT:  No, sir.
21                    THE COURT:  Were there any promises that have
22     been made other than promises in writing that cause you to
23     plead guilty?
24                    THE DEFENDANT:  No, sir.
25                    THE COURT:  At this point we do need to have
                                 26
```

1   a factual basis.  I recognize that a rather lengthy

    2   factual basis has been set forth in the plea agreement in

    3   paragraph 3 and signed by the defendant, but I would ask

    4   counsel to make a further record while the defendant is

    5   before me.

    6           I should remind the defendant that he has no

    7   obligation to answer questions about the offense but is,

    8   of course, free to do so if he chooses to do so after

    9   consulting with counsel.  But I would ask you -- either

   10   side to help me out with any kind of supplement of the

   11   factual statement in the plea agreement.

   12           MR. FOWLER:  Certainly, Your Honor.

   13   EXAMINATION BY MR. FOWLER:

   14   Q   Mr. Ouazzani, you understand that you are the

   15   defendant in this case, both in the indictment that's been

   16   referenced and in the information that's been referenced

   17   here today?  Do you understand that?

   18   A   Yes, sir.

   19   Q   And you understand that at this time you are under

   20   oath and answering questions so the court can make certain

   21   there's a factual basis that you are guilty of these three

   22   offenses?

   23   A   Yes, sir.

   24   Q   And you speak, understand, and read English; is that

   25   correct?

                                  27

```
1   A   Yes, sir.

2   Q   And you have reviewed the indictment prior to today in

3   detail both with me and on other occasions, correct?

4   A   Yes, sir.

5   Q   And specifically as the court went through Counts 11

6   and 23 of the indictment today, you followed along very

7   closely regarding everything the court said; is that

8   correct?

9   A   Yes, sir.

10  Q   And you also were present in court -- well, prior to

11  today, you and I have gone through the information that

12  was filed here today in detail, correct?

13  A   Yes, sir.

14  Q   And you obviously were present in court when

15  Mr. Stewart read that into the record today; is that true?

16  A   Yes, sir.

17  Q   And you understand the charges both in the information

18  and the indictment?

19  A   Yes, sir.

20  Q   Specifically regarding the indictment -- well, and you

21  also have signed a plea agreement which the court has

22  referenced here today, correct?

23  A   Yes, sir.

24  Q   And the court made reference to it, but there is a

25  detailed factual basis for the pleas to all three counts,
```
                                28

```
 1    which begins on page 2 and runs through page 6 of the plea
 2    agreement, correct?
 3    A    Yes, sir.
 4    Q    And you and I have reviewed those prior to today on
 5    several occasions, correct?
 6    A    Yes, sir.
 7    Q    And you understand that those facts -- you agree that
 8    those facts are accurate?
 9    A    Yes, sir.
10    Q    Specifically going through those regarding Count 11,
11    you agree that in April of '07, 2007, you obtained a
12    $175,000 loan from Union Bank as a line of credit for your
13    business Hafssa, correct?
14    A    Yes, sir.
15    Q    And that business was doing business as Truman Auto
16    Parts, correct?
17    A    Yes.
18    Q    And that business was -- it was a retail business in
19    the business of buying and selling used auto parts,
20    correct?
21    A    Yes, sir.
22    Q    And using that business, you obtained a loan for
23    working capital for that business, correct?
24    A    Yes, sir.
25    Q    And to obtain that loan, you provided false financial
                              29
```

1    information about both yourself, your assets, and that

2    company to obtain the loan; is that true?

3    A    Yes, sir.

4    Q    And those false -- that false information included a

5    false 2005 federal income tax submission which overstated

6    your income; is that true?

7    A    Yes, sir.

8    Q    And there was information about several parcels of

9    real estate, and that appraisal was falsely inflated as

10   well; is that correct?

11   A    Yes, sir.

12   Q    And the purpose of the loan was supposed to be for

13   working capital for your business; is that correct?

14   A    Yes, sir.

15   Q    And in addition you also overstated the inventory that

16   Hafssa actually had on hand; is that correct?

17   A    Yes, sir.

18   Q    And in spite of the fact that the proceeds -- well, in

19   spite of the fact that you were supposed to use the

20   working proceeds or the proceeds for working capital for

21   your business, you used it for other personal purposes; is

22   that correct?

23   A    Yes, sir.

24   Q    And you transferred approximately $165,000 in the

25   amounts listed in the indictment to the Bank of America;

                                    30

1    is that correct?

2    A   Yes, sir.

3    Q   And you took funds from the Bank of America and you

4    used those to purchase an apartment overseas in addition

5    to other reasons, correct?

6    A   Yes, sir.

7    Q   And that was not part of the business that you had

8    obtained the loan, correct?

9    A   Yes, sir.

10   Q   Regarding Count 23, in May of 2007, you caused a wire

11   transfer from the account of Bank of America to an

12   overseas account; is that correct?

13   A   Yes, sir.

14   Q   And these were the funds that you had originally

15   obtained from Union Bank with the false submissions that

16   you described earlier, correct?

17   A   Yes, sir.

18   Q   And by utilizing the Bank of America account and

19   sending the money overseas, that made it more difficult to

20   trace those funds; is that correct?

21   A   Yes, sir.

22   Q   And as we've discussed, those proceeds were used not

23   for your business but to purchase an apartment overseas in

24   addition to other purposes, correct?

25   A   Yes, sir.

31

1    Q   Moving on to Count I of the information, material

2    support, you are a naturalized citizen of the United

3    States; is that correct?

4    A   Yes, sir.

5    Q   And you are aware that Al-Qaida is a foreign terrorist

6    organization; is that true?

7    A   Yes, sir.

8    Q   And you heard the court recite the definition of what

9    a foreign terrorist organization is and you understood

10   that Al-Qaida had been designated by the United States as

11   a terrorist organization in years prior to the time period

12   discussed in these charges, correct?

13   A   Yes, sir.

14   Q   And you knew the nature and organization of Al-Qaida

15   in the sense that you knew it had committed acts of

16   terrorism over the years; is that true?

17   A   Yes, sir.

18   Q   And during the time period in the information, you

19   discussed with others ways to support Al-Qaida; is that

20   correct?

21   A   Yes, sir.

22   Q   And one of the ways you agreed to support Al-Qaida was

23   you provided, as detailed in the factual basis and in the

24   information, over $23,000 in United States currency for

25   the benefit and use of Al-Qaida; is that correct?

32

```
 1   A   Yes, sir.

 2   Q   And you discussed among others how to perform tasks at

 3   the request and for the benefit of Al-Qaida; is that

 4   correct?

 5   A   Yes, sir.

 6   Q   And many of the conversations and communications you

 7   had with others were conducted covertly to avoid detection

 8   by law enforcement or others; is that true?

 9   A   Yes, sir.

10   Q   And specifically regarding the $23,000, in August of

11   2007, you agreed to contribute approximately $6,500 to

12   Al-Qaida through another individual; is that correct?

13   A   Yes, sir.

14   Q   And you later repaid that same individual that $6,500

15   in funds, correct?

16   A   Yes, sir.

17   Q   And in approximately June or July of 2008, you agreed

18   to provide and did provide a further $17,000 for the

19   benefit of Al-Qaida; is that correct?

20   A   Yes, sir.

21   Q   And in June of 2008, you agreed and swore to another

22   individual your intent and desire to join Al-Qaida; is

23   that correct?

24   A   Yes, sir.

25   Q   And regarding the bank fraud and the money laundering
```
33

1    counts, those occurred -- the acts that we've discussed

2    occurred in the Western District of Missouri during the

3    time periods named in the charges, correct?

4    A   Yes, sir.

5    Q   As to the information and the acts discussed in that

6    information, some of those acts would have occurred in the

7    Western District of Missouri but some of those acts would

8    have occurred in other locations; is that correct?

9    A   Yes, sir.

10   Q   And you agreed as a part of the discussions regarding

11   your support of Al-Qaida with other individuals, to

12   further the purposes of Al-Qaida; is that correct?

13   A   Yes, sir.

14            MR. FOWLER:  Your Honor, I think that covers

15   the elements pretty thoroughly and probably beyond.  If

16   the court has other areas of inquiry, I'd sure try to

17   address those.

18            THE COURT:  Well --

19            MR. STEWART:  Your Honor, may I have just a

20   moment?

21            THE COURT:  Yes.  Mr. Stewart, are there some

22   additional questions or some issues that you want to take

23   up?

24            MR. STEWART:  Not concerning the factual

25   basis, but Mr. Casey reminded me that part of the plea

                            34

1    agreement references in the written plea agreement

2    Mr. Ouazzani's agreement to cooperate with forfeiture

3    proceedings.  I didn't mention that specifically.

4                THE COURT:  All right.  If you want -- if

5    questions should be asked of the defendant.

6                MR. FOWLER:  We would acknowledge there are

7    forfeiture provisions in the plea agreement.  We've

8    discussed those and agreed to them.  I think that's

9    separate from the factual basis for the plea, but

10   certainly we acknowledge that.

11               MR. STEWART:  Right.

12               THE COURT:  Okay.  Any other loose ends,

13   Mr. Stewart, that you think we ought to have covered?

14               MR. STEWART:  We've covered everything.  No,

15   that's just one small point that was in the plea agreement

16   that was not covered in open court that I wanted to put on

17   the record.

18               THE COURT:  All right.  I might mention there

19   seems to be some, I take it, public interest in the

20   proceeding that while, as one might suppose, there are

21   probably a number of confidential matters not known to me

22   either but somewhat unusually the plea agreement itself is

23   not under seal, and the factual basis, I think it's been

24   pretty well covered by Mr. Fowler.

25               But there is a -- in paragraph 3 of the plea

                              35

```
1    agreement there is some specification of the factual basis

2    that I take it is available for anyone that wants to check

3    it out for purposes of accuracy.

4            Based on the record before me and what I have

5    from both counsel and the defendant, I do accept the plea

6    of guilty as to the information and the plea of guilty as

7    to the bank fraud count that is 11 of the indictment and

8    the money laundering count, 23, of the indictment.

9            I accept those three pleas and direct that they

10   be entered in the record.  I find that the pleas have been

11   voluntarily made and that there is a factual basis for

12   acceptance and the defendant understands the consequences

13   of the plea.

14           A presentence investigation is ordered.  A draft

15   of the report will be made available for examination by

16   both sides.  Both sides will have an opportunity to ask

17   for changes in the report.  When there is as much

18   agreement as possible, the report will be prepared in

19   final form and submitted to the court at which time a

20   sentencing proceeding can be scheduled.

21           The defendant is apparently in custody and will

22   remain in custody until further order of the court.

23           If there is nothing further to take up with me

24   in the case today, court will be adjourned.

25                   * * * * * * * *
```

36

REPORTER'S CERTIFICATE

     I certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


_____     _____
   Date              Registered Merit Reporter

Gayle M. Wambolt, CCR No. 462
Registered Merit Reporter

Case 4:10-cr-00025-HFS   Document 31   Filed 07/09/10   Page 37 of 37